UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUDITH A. HENDRIAN, Individually and as
Personal Representative of the Estate of
HOWARD G. HENDRIAN, Deceased,

        Plaintiff,

                                    Case No. 08-14371
v.                               Honorable Julian Abele Cook, Jr.

SAFETY-KLEEN SYSTEMS, INC.,

        Defendant.

## ORDER

On October 15, 2008, the Plaintiff, Judith Hendrian - acting individually and as the personal representative of the estate of her deceased husband, Howard G. Hendrian - filed this action against the Defendant, Safety-Kleen Systems, Inc. (Safety-Kleen). In her complaint, she alleges that Safety-Kleen produced and supplied to her deceased husband's former employer, Ford Motor Company (Ford Motors), a cleanser (known as "105 Solvent") which contained a carcinogenic chemical benzene. It is the Plaintiff's position that (1) her deceased husband was directed by his employer to use this toxic solvent in connection with his job, and (2) his use of this product caused him to incur serious medical problems which included an acute form of myelogenous leukemia that, in her opinion, caused his death.

In her pursuit of this claim against Safety-Kleen, she has advanced four basic theories of liability; namely, (1) failure to warn, (2) strict liability, (3) negligence, and (4) loss of consortium.

However, Safety-Kleen, in its reaction to the Plaintiff's claims of liability, has filed a motion for the entry of summary judgment on all four counts, arguing, in part, that her lawsuit is barred by the "sophisticated user" doctrine under Michigan law.[1]

I.

Howard Hendrian cleaned automatic transmission valve bodies at Ford Motors from 1990 to 1993. (Compl. ¶ 5.) According to Hendrian, the cleaning solvent Mr. Hendrian was exposed to in his job – 105 Solvent, produced by Safety-Kleen – contained the chemical benzene, which is "un-disputedly carcinogenic to humans." (Pl. Resp. Ex. 3, ¶1, ¶5.) In 2007, Mr. Hendrian died of leukemia. (Compl. ¶ 12.)

According to Safety-Kleen, Ford was well aware of the dangers of 105 Solvent, which Safety-Kleen refers to as "organic solvent," because of Ford Motors' extensive documentation and employee training on the risks of the chemicals it used. (Def. Br. Summ. J. 2). Ford Motors conducted a toxicological review of every hazardous product, including organic solvents, used in Ford's plants (Hands Dep.65:19-66:6, Jan. 13, 2012) by reviewing the information provided by the product's supplier or manufacturer (Def.'s Mot. Summ. J., Ex. E, "Product Engineering Procedure," HNDRN000408, Feb. 1982; Hands Dep., 66:12-67:9.). Ford Motors maintained a database called the Materials and Toxicology System (MATS) containing products' safety information, as provided by the manufacturer. (Hands Dep., 67:10-18.) Ford Motors produced Material Safety Data Sheets with information about each chemical product in the work area (Hands Dep., 86:1-6) and chemical

---

[1] Mich. Comp. Laws § 600.2947(4) states "(e)xcept to the extent a state or federal statute or regulation requires a manufacturer to warn, a manufacturer or seller is not liable in a product liability action for failure to provide an adequate warning if the product is provided for use by a sophisticated user."

fact sheets about each chemical (Doak Dep., 42:22-43:11, Oct. 11, 2011). Ford Motors also trained employees about the dangers of specific chemicals; the training module for "organic solvents" included instructions that benzene is an organic solvent and can cause cancer, specifically leukemia. (Def.'s Ex. N, 15).

According to Hendrian, Ford Motors did not know about the danger of the cleaning solvent Mr. Hendrian used, which Hendrian names specifically as 105 Solvent. Although Safety-Kleen repeatedly submitted to Ford Motors the list of chemicals in 105 Solvent, benzene was not on the list. (Pl. Resp. Ex. 4, "Safety-Kleen 105 Solvent –MS Material Safety Data Sheet," SKSHEN001061, SKSHEN001065, SKSHEN00171, SKSHEN001079.) Ford Motors never independently tested the chemicals it received from Safety-Kleen. (Hands Dep., 71:12-25.)

II.

The court has jurisdiction over this case on the basis of diversity of citizenship between the parties. "In federal cases based on diversity jurisdiction, the court must apply state law as dictated by applicable state's highest court and legislature." *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). When the "highest court has not spoken," the court looks to "all available data" to determine state law, including state appellate court decisions, relevant dicta from the state supreme court, law review commentaries, restatements of law, and the majority rule among other states. *Angelotta v. American Broad. Corp.*, 820 F.2d 806, 807 (6th Cir.1987). Here, the Court applies Michigan law.

III.

The purpose of the summary judgment rule, as reflected by Federal Rule of Civil Procedure 56, "is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The entry of a summary judgment is proper only "if the

3

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties." *Aqua Grp., LLC v. Fed. Ins. Co.*, 620 F. Supp. 2d 816, 819 (E.D. Mich. 2009) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). In order for a dispute to be genuine, it must contain evidence upon which a trier of the facts could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 560 (6th Cir. 2004). When assessing a request for the entry of a summary judgment, a court "must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The entry of a summary judgment is appropriate if the nonmoving party fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Thus, the moving party has the initial obligation of identifying those portions of the record that demonstrate the absence of any genuine issue of a material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must "come forward with some probative evidence to support its claim and make it necessary to resolve the differences at trial." *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); see also *Anderson*, 477 U.S. at 256. The presence or the absence of a genuinely disputed material fact must be established by (1) a specific reference to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only),

4

admissions, interrogatory answers, or other materials," or (2) a "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

IV.

In her filing of this lawsuit, the Plaintiff argues, among other things, that Safety-Kleen (1) failed to warn her deceased husband of the benzene-related dangers of 105 Solvent, (2) manufactured the 105 Solvent with a defective design because it contained benzene, and (3) was responsible for her loss of consortium.

A.

In Michigan, "a manufacturer or seller is not liable in a product liability action for failure to provide an adequate warning if the product is provided for use by a sophisticated user." Mich. Comp. Laws § 600.2947(4). Safety-Kleen submits that it has no liability to the Plaintiff because, in its opinion, her deceased husband's former employer, Ford Motors, was a sophisticated user.

A "sophisticated user" is defined by Michigan law to be"[a] person or entity that, by virtue of training, experience, a profession, or legal obligations, is or is generally expected to be knowledgeable about a product's properties, including a potential hazard or adverse effect." Mich. Comp. Laws § 600.2945(j). In order to prevail under a sophisticated user doctrine, a defendant seller must show that the user (1) had full knowledge of the defect, and (2) should be expected to know of the defect's dangerous characteristics. Thus, if Ford Motors is found to be a sophisticated user of the product, Safety-Kleen will be precluded from any liability for its alleged failure to warn a user about the dangers of the product.

The word "product" is defined by the law in Michigan as including " any and all component

5

parts to a product." Mich. Comp. Laws § 600.2945(g) . The parties in this action have differing opinions as to whether the product at issue is the specific 105 Solvent or general organic solvent. Michigan case law suggests that the "product" about which a sophisticated user is or is expected to be knowledgeable is a specific item rather than a general category of items. *See Heaten v. Benton Const. Co.*, 780 N.W.2d 618, 623 (Mich. Ct. App. 2009); *Walker v. Eagle Press and Equip. Co.*, 408 F.Supp.2d. 402, 408 (E.D. Mich. 2005). In *Heaton*, the court found that the product at issue in the sophisticated user analysis was the particular precast concrete foundation walls furnished by the defendant. 780 N.W.2d at 623. In *Walker*, the court explained that a company which specializes in rigging and moving large machinery was not a sophisticated user of an unassembled press because it was not expected to have known that the unassembled press had a hole in it. 408 F. Supp. 2d at 408.

In support for its argument, Safety-Kleen has asked the Court to evaluate *Muszynski v. Auto. Chem. Corp.*, No. 172735, 1996 WL 33358101 (Mich. Ct. App. Sept. 17, 1996) which, in its opinion, stands for the proposition that a large group of chemicals, when grouped together as "organic solvents," constitutes a product about which the company was a sophisticated user. (Def.'s Reply Br., 2 n.1.) However, *Muszynski* is distinguishable from the instant case in that it was based on the common law meaning of a sophisticated user rather than the statutory definition of the phrase that became law in 1996. *See Muszynski*, 1996 WL 33358101. The 1996 legislation "displaced the common law" and, hence, reliance upon pre-1996 common law principles is no longer appropriate. *Irrer v. Milacron*, 484 F. Supp. 2d 677, 680 (E.D. Mich. 2007). Even if reliance was appropriate, *Muszynski* differs from the case at hand because the plaintiffs therein complained about the effects of "various chemicals and solvents" as opposed to just one cleaning solvent,

thereby justifying the court addressing the chemicals as a larger group of "organic solvents." *Muszynski,* 1996 WL 33358101, at *1. Likewise in *Irrer*, the plaintiffs sued the defendants about the group of chemicals called "metalworking fluids," so the product in question was necessarily a larger group of chemicals. *Irrer*, 484 F. Supp. 2d at 678-79.

The product in question in this case is not, as Safety-Kleen claims, "organic solvents." "Organic solvents" is too general to describe the product that the Plaintiff's now deceased husband allegedly used when he cleaned automatic transmission valve bodies. Like the shear walls or the press – not described as foundation construction materials, nor as large machinery – 105 Solvent is the specific product that Ford used in the cleaning process. Unlike the controversies in *Muszynski* and *Irrer*, the question here is not whether a broad range of chemicals caused the now challenged illness and death. Rather, the Plaintiff contends that a cleaning solvent - specifically, 105 Solvent - contained the benzene which produced the leukemia that allegedly caused the death of her deceased husband.

There is a question of material fact as to whether Ford Motors was "knowledgeable" that the 105 Solvent contained properties which contained harmful benzene. The material safety data sheet (MSDS) - now a part of the record in this action - do not include benzene in the ingredient list for the relevant years that the Plaintiff's deceased husband worked at Ford Motors. (Pl. Resp. Ex. 4, "Safety-Kleen 105 Solvent –MS Material Safety Data Sheet," SKSHEN001061, SKSHEN001065, SKSHEN00171, SKSHEN001079.) Although ethylbenzene is listed as an ingredient on three of these four forms, it is a distinct chemical from benzene. Safety-Kleen's argument that Ford Motors knew about the harmful effects of this product boils down to the fact that Ford gave safety training on organic solvents that included warnings that they could be

carcinogenic. However, this argument fails to demonstrate that Ford Motors knew that 105 Solvent contained benzene. At a minimum, this Court cannot say with certainty that Ford Motors knew about 105 Solvent's properties.

The other way a company can be identified as a sophisticated user of a product is if it, "by virtue of training, experience, a profession, or legal obligations, . . . is generally expected to be knowledgeable about a product's properties, including a potential hazard or adverse effect." Mich. Comp. Laws § 600.2945(j). There is also an issue of a material fact about whether Ford Motors was "generally expected to be knowledgeable" that the 105 Solvent contained benzene. As the Plaintiff argues, the only information that Ford Motors purportedly had about the content of the 105 Solvent came from the information that it had received from Safety-Kleen. As explained above, the MSDS sheets never said 105 Solvent contained benzene. Ford Motors never conducted an independent test of the chemicals that it received from Safety-Kleen. (Hands Dep., 71:12-25, 77:21-24, 78:19-79:6).

Safety-Kleen offers two arguments that support its proposition that Ford Motors should have known that the product contained benzene. First, it submits that Ford Motors was "legal[ly] obligat[ed]" under federal Occupational Safety and Health Administration (OSHA) regulations and Michigan OSHA (MIOSHA) laws to identify, monitor, and inform employees about hazardous materials in the work place. However, this argument by Safety-Kleen is deficient, in that it has failed to demonstrate that Ford Motors knew benzene was in 105 Solvent and thus could have complied with the law by monitoring it and informing its employees. Moreover, as Hendiran points out, Ford was not required by OSHA regulations to test for hazardous chemicals in the products it received from manufacturers; it was allowed to rely on Safety-Kleen for accurate information. 29 C.F.R. § 1910.1200(d)(1).

8

Second, Safety-Kleen submits that Ford Motors had "experience" in evaluating hazardous material. However, this argument only generalizes the experience that Ford Motors had with organic solvents. It does not describe any specific experience that Ford Motors had with the 105 Solvent. Thus, this Court cannot conclude with any reasonable degree of certainty that Ford Motors was expected to be knowledgeable about Solvent 105's properties.

Since there are genuine issues of a material fact about whether Ford Motors was aware of 105 Solvent's properties, the Court, at this stage, cannot find that Ford Motors was a sophisticated user. The Court therefore declines to grant a summary judgment on all four counts of the Plaintiff's claims based on Safety-Kleen's sophisticated user theory.

B.

Safety-Kleen's second argument is that this Court should grant a summary judgment in its favor because the Plaintiff has failed to comply with Fed. R. Civ. P. 26(a)(2)(B), which requires that the disclosure of expert witnesses be "accompanied by a written report [ ] prepared and signed by the witness." This Rule also requires that a written report must be disclosed "at least 90 days before the date set for trial or for the case to be ready for trial." Fed. R. Civ. P. 26(a)(2)(D)(I). In its reliance upon this federal rule of procedure, Safety-Kleen submits that expert testimony is absolutely necessary to the Plaintiff's "failure to warn" claim. She disagrees. However, it should be noted that the Court has not scheduled a date for trial. Therefore - and without attempting to address the substance of this argument - Safety-Kleen's position is facially premature and must be rejected without prejudice.

C.

Finally, Safety-Kleen looks to Fed. R. Civ. Pro. 12(c) which provides that "[a]fter the

9

pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." Motions for judgment on the pleadings are subject to the same standard of review as a motion to dismiss pursuant to Rule 12(b)(6). *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010).

When considering a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must (1) accept the plaintiff's well-pleaded allegations as true and (2) construe each of them in a light that is most favorable to its position in this controversy. *Bennett v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010). However, this assumption of truth does not extend to the plaintiff's legal conclusions because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). The complaint "must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citation and internal quotation marks omitted).

In order to survive an application for dismissal, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this standard, the "plaintiff [must] plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. In essence, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Here, Safety-Kleen has made two arguments, both of which generally assert that neither of the Plaintiff's quests for relief are enforceable in law. With regard to Count I, Safety-Kleen contends that the Plaintiff seeks an award of exemplary damages, which are unattainable under Michigan law. Addressing Count II, Safety-Kleen submits that the Plaintiff has filed a complaint

10

in which she seeks relief on the basis of "strict liability" - a tort that is not available to her under Michigan law.

First, Safety-Kleen is correct when it argues that exemplary damages are not available under Michigan law. *See, e.g.*, *Fellows v. Superior Products Co.*, 506 N.W.2d 534, 536 (Mich. Ct. App. 1993). However, when exemplary damages are wrongly presented in a case - such as in the now pending action - a court is authorized to strike only the targeted exemplary damages, and not the entire claim. *See id*. *Kemp v. Pfizer*, 947 F.Supp. 1139, 1144 (E.D. Mich. 1996) Here, the Court grants a judgment on the pleadings in favor of Safety-Kleen only as it applies to the Plaintiff's request for exemplary damages under Count I.

Second, Safety-Kleen is correct when it argues that "strict liability" is not a valid products liability theory in Michigan. *E.g.*, *Johnson v. Chrysler Corp.*, 254 N.W.2d 569, 571 (Mich. Ct. App. 1977). However, the Court does not agree with Safety-Kleen when it submits that the characterization of Count II as a request for "strict liability," which obligates an obliteration of the entire count. Courts within the Sixth Circuit are obligated to examine the essence of a claim. *Heaton*, 780 N.W.2d at 623 ("even though plaintiffs' claim was one of ordinary negligence, it still could come within the broad definitions of 'product liability action'"). As the Plaintiff points out, Safety-Kleen acknowledges that each claim, including Count II, incorporates a product liability issue.(Def.'s Br. Summ. J., 1 n.2.) ("This case is a product liability action because each one of Plaintiff's claims are 'based on a legal or equitable theory of liability brought . . . for injury to a person . . . caused by or resulting from the production of a product.' Mich. Comp. Laws Ann. § 600.2945(h).") Additionally, a quick reading of Count II makes it clear that the Plaintiff is pleading a design defect claim in product liability. Thus, the essence of Count II is viable product liability

action which cannot be dismissed on the theory that it is a strict liability action. The Court rejects Safety-Kleen's invitation to enter a judgment on the pleadings as it relates to Count II.

V.

For the reasons explained above, Safety-Kleen's motion for the entry of a summary judgment is denied. (ECF 44). The Court also denies Safety Kleen's motion to dismiss Count 1 of Hendrian's complaint, except to the extent that it strikes Hendrian's request for exemplary damages.

IT IS SO ORDERED.

Date: August 30, 2012  s/Julian Abele Cook, Jr.
JULIAN ABELE COOK, JR.
U.S. District Court Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on August 30, 2012.

s/ Kay Doaks
Case Manager