UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUDITH HENDRIAN,

     Plaintiff,

v.                                                              Case No: 08-cv-14371
                                                                Hon. Victoria A. Roberts
SAFETY-KLEEN SYSTEMS, INC.

     Defendant

_____/

**ORDER GRANTING DEFENDANT'S RENEWED MOTION FOR SUMMARY
JUDGMENT (DOC. # 222)**

**I.        INTRODUCTION**

Safety-Kleen Systems' ("Safety-Kleen") first summary judgment motion, filed in

2012, argued that some of Plaintiff Judith Hendrian's ("Hendrian") claims were not

cognizable in Michigan, and it was shielded from liability under the "sophisticated user"

defense. The Honorable Julian Cook denied Safety-Kleen's motion. He reasoned that,

at such an early stage of litigation, there remained a genuine issue as to whether Ford

Motor Company was "knowledgeable," as required for the "sophisticated user" defense

to apply. Moreover, Judge Cook concluded that Hendrian's claims were cognizable

under Michigan law.

Discovery and decisions on *Daubert* motions have occurred since Safety-Kleen's

first summary judgment motion. Now before the Court is Safety-Kleen's renewed Motion

for Summary Judgment. The Court **GRANTS** it.

**II.       BACKGROUND**

1

Howard G. Hendrian, late husband of Plaintiff Judith Hendrian ("Hendrian"), worked as a senior technician cleaning automotive parts at Ford Motor Company. Hendrian says from 1990 to 1993, Mr. Hendrian used Safety-Kleen Solvent 105 ("SK-105") to clean the transmission valve bodies. SK-105 contained the carcinogen Benzene. In 2007, Howard died of leukemia.

Hendrian says Mr. Hendrian developed leukemia as a result of his occupational exposure to the benzene contained in SK-105. Hendrian filed a product liability suit against Safety-Kleen alleging: (1) failure to warn; (2) strict liability, which the Court construed as a count for design defect; (3) negligence; and (4) loss of consortium.

During discovery, Safety-Kleen filed two motions in *limine* to exclude Hendrian's experts Dr. Melvyn Kopstein (Kopstein) and Dr. Nachman Brautbar (Brautbar). Docs. # 118 and 119.

Kopstein was retained to give opinions concerning: "(1) the benzene content and exposure-specific chemical properties of SK-105; (2) the adequacy of benzene specific warnings and instructions for safe use on SK-105 labels and Material Safety Data Sheets ("MSDS"); (3) Hendrian's inhalation exposures to benzene arising from his use of SK-105; (4) the scientific merit of Safety-Kleen's Method 9211; and, (5) Safety-Kleen's compliance with Ford's requirement that its suppliers provide timely and accurate product information." (Doc. # 198 at 2).

Judge Cook concluded that portions of Kopstein's report and opinions were inadmissible under *Daubert*, and precluded Kopstein from opining about: "(1) the benzene content and exposure specific chemical properties of SK-105; and (2) Hendrian's inhalation exposures to benzene arising from his use of Sk-105." (Doc. #

217 at 7 - 8).

Brautbar was retained to opine about the general and specific causation of Mr. Hendrian's leukemia. For general causation, Braubar opined that occupational exposure to benzene can cause both Acute Myelogenous Leukemia (AML) and Myelodysplastic Syndrome (MDS). As to specific causation, Brautbar considered Mr. Hendrian's medical history, his occupational exposure to benzene, his medical conditions and particular features of his hematologic malignancy that implicated benzene as a cause for his leukemia. Doc. # 144 at 4.

Since Brautbar's opinion greatly relied on Kopstein's previously rejected estimate that the SK-105 Mr. Hendrian used contained 1,000 parts per million benzene, Judge Cook excluded Brautbar's opinion and report. Doc. # 200.

Based on prior rulings, neither of Hendrian's expert can opine on the issue of causation or the benzene and chemical properties of SK-105. See, Docs. #  200, 217.

Safety-Kleen says as a result of these exclusions, Hendrian cannot prove causation for any of her theories. Safety-Kleen says the claim also fails because Ford was a sophisticated user. Safety-Kleen says although Judge Cook previous denied Safety-Kleen summary judgment on the issue of whether Ford was a sophisticated user, Judge Cook's prior order said "at this time," meaning Safety-Kleen could raise the issue again.

Hendrian says it was plain error for the Court to exclude the causation opinions of Braubar and Kopstein. She says once this Court corrects these errors by using its discretion to reconsider the relevant motions *in limine*, she will be able to prove her case. Hendrian also says Safety-Kleen is prohibited from re-raising the sophisticated

3

user defense since Judge Cook denied Safety-Kleen summary judgment on that issue.

## III.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) says a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party asserting that a fact cannot be genuinely disputed must support the assertion by citing to particular parts of materials in the record. Fed. R. Civ. P. 56. The burden is on the moving party to show that no genuine issue of material facts exist, and a court should evaluate the evidence in the light most favorable to the nonmoving party. *Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 412 (6th Cir. 2006).

To create a genuine issue of material fact, the non-moving party must present more than a mere scintilla of evidence in support of her position to raise some doubt as to the existence of a fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "Conclusory allegations do not create a genuine issue of material fact which precludes summary judgment." *Johari v. Big Easy Restaurants, Inc.*, 78 F. App'x 546, 548 (6th Cir. 2003). The non-moving party must "go beyond the pleadings and … designate specific facts showing that there is a genuine issue for trial," bringing forth sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 249-50.

The Court may grant a motion for summary judgment if the non-moving party fails to make a sufficient showing establishing the existence of an element that is essential to that party's case.  *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.,* 328 F.3d 870, 873 (6th Cir. 2003).

IV.     **DISCUSSION**

A.      **Prior Rulings of the Court**

Hendrian asks the Court to revisit rulings on motions in *limine* which precluded

testimony from experts Brautbar and Kopstein. (Doc. # 223 at 21). Hendrian says the

Court erred in granting the motions in *limine* because: (1) expert Kopstein's testimony

was improperly excluded under *Daubert*; and (2) the Court improperly excluded

Brautbar's alternative theory of causation since that issue was not properly briefed and

before the Court.

As authority permitting the Court to revisit these issues, Hendrian cites *Luce v.*

*United States*, which says, "the district judge is free, in the exercise of sound judicial

discretion, to alter a previous in *limine* ruling." *Luce v. United States*, 469 U.S. 38, 41-42

(1984). The Court declines to do so; It believes Judge Cook's rulings were correct.

Hendrian says it was improper for Judge Cook to disregard Brautbar's alternative

causation theory because Safety-Kleen did not specifically challenge its admissibility;

however, it was proper for Judge Cook to exclude Brautbar's alternative causation

"differential diagnosis" theory, which was part of his causation theory. Brautbar's reports

were complete and available for the Court to evaluate. Under Rule Federal Rule of

Evidence 702 and  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597

(1993), the trial court acts as a "gatekeeper" to ensure that all scientific testimony and

evidence is not only relevant, but reliable. *Id.* at 597.

As Judge Cook noted, "[a] differential diagnosis seeks to identify the disease

causing a patient's symptoms by ruling in all possible diseases and ruling out alternative

diseases until (if all goes well) one arrives at the most likely cause."  Doc. # 217 at 13

citing *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 674 (6th Cir. 2010). This requires a court to examine whether the expert can: (1) make an accurate diagnosis of the nature of the disease; (2) reliably rule in the possible causes of the disease; and (3) reliably rule out the rejected causes of the disease. *Tamraz*, 620 F.3d at 674. If the court answers "no" to any of those questions, the court must exclude the ultimate conclusion reached because, as Judge Cook correctly noted, "simply claiming that an expert used the 'differential diagnosis' method is not some incantation that opens the *Daubert* gate." Doc. # 217 at 13 citing *Tamraz*, 620 F.3d at 674.

Neither Brautbar nor Hendrian explained that Brautbar ruled out all potential alternative causes for Mr. Hendrian's disease as required under *Tamraz*. Since Judge Cook was able to determine that Brautbar's reports did not comply with the standard elucidated in *Tamraz*, briefing the validity and reliability of Brautbar's alternative causation theory was unnecessary. Accordingly, Judge Cook, acting as a scientific gatekeeper as required under Daubert, properly excluded Braubar's alternative theory of causation.

**B.    Establishing Causation in Failure to Warn and Negligence Claims.**

Hendrian alleges one count of failure to warn. "Under Michigan law, the manufacturer of a product has a duty to warn of dangers associated with the intended uses or reasonably foreseeable misuses of its product." *Peck v. Bridgeport Machs., Inc.*, 237 F.3d 614, 619 (2001). To establish that a product is defective due to a failure to warn, a plaintiff must show that a manufacturer or seller: (1) had actual or constructive knowledge of the alleged danger; (2) had no reason to believe that consumers would know of this danger; and (3) failed to exercise reasonable care to inform consumers of

6

the danger. *Towner v. Grand Trunk W. R. Co.*, 57 F. App'x 232, 236-37 (6th Cir. 2003).

In addition, Hendrian asserts a negligence claim, which in essence has the same elements as her failure to warn claim. See, Doc. # 1-3 at 7. The elements of negligence are "duty, breach, causation, and damages." *New Freedom Mortgage Corp. v. Globe Mortgage Corp.*, 281 Mich. App. 63, 69 (2008). Hendrian says Safety-Kleen was negligent by breaching its duty to warn Hendrian of SK-105's alleged hazards.

The Sixth Circuit notes that for both failure to warn and similar negligence claims, "[w]here causation is lacking, the question of a duty to warn need not be addressed." *Towner v. Grand Trunk W. R. Co.*, 57 F. App'x 232, 236-37 (6th Cir. 2003); *Peck v. Bridgeport Machs., Inc.*, 237 F.3d 614, 619 (6th Cir. 2001).

In toxic-tort cases, a plaintiff must establish general causation and specific causation. For general causation, the issue is whether the chemicals were capable of causing the victim's medical conditions, whereas with specific causation, the issue is whether the chemicals did in fact cause the plaintiff's specific medical conditions. *Trice v. Oakland Dev.*, 2008 Mich. App. LEXIS 2484, *30, 2008 WL 7488023 (Mich. Ct. App. Dec. 16, 2008). Thus, to prove causation in a toxic tort case, the plaintiff must show: (1) that the alleged toxin was capable of causing injuries like those suffered by the plaintiff (general causation) and (2) that the toxin was the cause of the plaintiff's injury (specific causation). *Trice v. Oakland Dev.*, 2008 Mich. App. LEXIS 2484, *30, 2008 WL 7488023 (Mich. Ct. App. Dec. 16, 2008).

Causation does not always require expert testimony. It is unnecessary in cases where jurors "are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training."

*Salem v. United States Lines Co.*, 370 U.S. 31, 35 (1962); *Gass v. Marriott Hotel Servs.*, Inc., 558 F.3d 419, 434 (6th Cir. 2009).

However, in toxic tort cases involving complex chemicals and their effects on human health, expert testimony is often required because the alleged injuries are "not immediately obvious and the connection between exposure and injury is not a matter of common sense or everyday experience." *Gass v. Marriott Hotel Servs.*, Inc., 558 F.3d 419, 437 (6th Cir. 2009) (citation omitted); *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46 (2nd Cir. 2004).

Due to the complex nature of her lawsuit, Hendrian must bring forth expert testimony to establish that the chemical properties within SK-105 generally and specifically caused Mr. Hendrian's leukemia. A lay person would not understand, without aid of an expert, that the benzene in SK-105 could cause cancer, and that Mr. Hendrian's alleged exposure to the benzene in SK-105 caused his leukemia. See, *Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 433 (6th Cir. 2009) (noting the "complexity of the factual issue presented in [some cases] justifie[s] requiring the plaintiff to support its [causation] case with expert testimony.").

Since Hendrian's expert's were excluded from opining on causation, she cannot prove general or specific causation. See, *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 677 (6th Cir. 2011) (When both "causation inquiries involve scientific assessments that must be established through the testimony of a medical expert,' 'a plaintiff's toxic tort claim will fail' without such testimony."); *Peck v. Bridgeport Machs., Inc.*, 237 F.3d 614, 619 (6th Cir. 2001) ("[w]here causation is lacking, the question of a duty to warn need not be addressed."). Accordingly, Safety-Kleen is entitled to summary judgment on

8

Hendrian's negligence and failure to warn claims.

Moreover, since Hendrian cannot prove her failure to warn claim as a matter of law, the question of whether Ford was a sophisticated user need not be addressed.

### C.     Design Defect Claim

Hendrian asserts a strict liability claim which is not cognizable under Michigan law. Rather than dismiss it, Judge Cook examined the essence of the claim, and properly construed it as one for design defect, as directed under Michigan law. See, *Heaton v. Benton Const. Co.*, 286 Mich. App. 528, 534-35 (2009).

To prove a design defect, a plaintiff must show that the product was "not reasonably safe for its foreseeable uses" and that a "risk-utility analysis" favored a safer design. This requires a showing, through either direct or circumstantial evidence, that: (1) the product was not reasonably safe when it left the control of the manufacturer; and (2) a "feasible alternative production practice was available that would have prevented the harm without significantly impairing the usefulness or desirability of the product to users." *Croskey v. BMW of N. Am., Inc.*, 532 F.3d 511, 515-16 (6th Cir. 2008) *citing* M.C.L. § 600.2946(2). Expert testimony is required to establish the design defect. *Maldonado v. Otis Elevator Co.*, No. 212495, 1999 WL 33409923, at *2 (Mich. Ct. App. Nov. 30, 1999).

Hendrian lacks the requisite expert testimony needed to establish a design defect. Braubar and Kopstein are Hendrian's only experts. The Court excluded Kopstein from opining about the benzene content and exposure specific chemical properties of SK-105, and Braubar was excluded from giving any testimony. Thus, Hendrian lacks expert testimony that would show a design defect in SK-105's benzene chemical

9

properties, and that there existed an alternative feasible design of the chemical properties in SK-105 that would not have impaired the usefulness or desirability of SK-105. Accordingly, Hendrian's design defect claim fails as a matter of law.

### D.    Loss of Consortium Claim

Count IV of Hendrain's complaint is a claim for loss of consortium. "A derivative claim for loss of consortium stands or falls with the primary claims in the complaint." *Long v. Chelsea Community Hosp.*, 219 Mich. App. 578, 589, 557 N.W.2d 157 (1996) (citation omitted). Since Hendrian's primary claims fail as a matter of law, her loss of consortium claim also fails.

## V.    CONCLUSION

Safety-Kleen's Renewed Motion for Summary Judgment (Doc. # 222) is

**GRANTED**.

**IT IS ORDERED.**

S/Victoria A. Roberts
Victoria A. Roberts
Dated:  August 13, 2015              United States District Judge

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 13, 2015.

S/Carol A. Pinegar
Deputy Clerk